James J. Ward, Appellant, *v.* The Metropolitan Elevated Railroad Company and Others, Respondents.

*Unrecorded release of easements to an elevated railroad — rights vested in the releasee, valid as against a purchaser — duty of inquiry by the purchaser — notice from the actual possession of real estate — easements which come within the Recording Act — presumption as to a change in character of occupation.*

Where the owner of property abutting on a street on which an elevated railroad is operated releases to such railroad all the easements or property rights appurtenant to such premises taken by it for the maintenance and operation of such road, and releases such railroad company from all causes of action, past and future, because of such maintenance and operation, and consents to the perpetual maintenance and operation of said railroad in front of such premises, the railroad company acquires thereby title to the easements which were, prior to that time, vested in the owner of the premises.

Thereafter the easements are no longer an appurtenance to the premises in question, and although such owner subsequently conveys such premises by a full covenant warranty deed, without reservation or reference to the previous release, and such deed is recorded prior to the recording of the release, the grantee named in such deed will not acquire title to such easements where said railroad is in the actual possession of such easements at the time of the purchase.

Where a proposed purchaser of real estate sees an elevated railroad in the open and visible possession of certain easements appurtenant to the property he proposes to purchase, at the time of the purchase, and purchases, without taking any steps for the purpose of ascertaining by what title the railroad holds possession thereof, he is not, as far as such easements are concerned, a purchaser in good faith, within the meaning of the Recording Act, under which act registry and possession, each constitutes constructive notice which puts a party upon inquiry, and charges him with knowledge of every fact to which inquiry would reasonably have led.

If a person is in the actual possession of real estate under an unrecorded deed, he will be protected against a subsequent purchaser who records his deed. It is the duty of a purchaser to inquire as to the rights of the person in possession, and such duty of inquiry as to the rights therein of a person in the possession of real estate, thereby imposed upon an intending purchaser, will not be fully satisfied by anything less than an inquiry of the occupant himself touching his title and interest.

Easements capable of physical examination are embraced within the provisions of the Recording Act, and are necessarily subject to the same law of notice as conveyances of a fee.

While an intending purchaser of real estate may know that the occupant of the premises in question entered into the possession thereof as a trespasser, it will

not justify his assuming that the occupant has continued to occupy them as a trespasser, and if, in the meantime, the character of his occupancy undergoes a change and he becomes the owner of the fee, the purchaser is chargeable with notice thereof; the courts will not presume that a party once a trespasser is always a trespasser.

APPEAL by the plaintiff, James J. Ward, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 17th day of March, 1894, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the plaintiff's complaint upon the merits.

*Eugene D. Hawkins* and *Edward W. S. Johnston*, for the appellant.

*Julien T. Davies, Alexander S. Lyman* and *Frederick Allis*, for the respondents.

PARKER, J. :

In August, 1889, nearly eleven years after defendants' elevated railroad was open for traffic, Johanna Leipziger, who was then the owner of the premises in question, together with her husband, executed and delivered to the defendants for the consideration of $3,300, an instrument in writing under seal, conveying and releasing to defendants the easements or property rights appurtenant to said premises taken for the maintenance and operation of said railroad, releasing defendants from all causes of action, past and future, for such maintenance and operation, and consenting to the perpetual maintenance and operation of said railroad in front of said premises. This instrument has never been recorded.

. In January following, Johanna Leipziger, by full covenant warranty deed, conveyed said premises to the plaintiff without reservation or reference to the previous release given to the defendants. This deed was duly recorded. Plaintiff contended upon the trial that within the provisions of the Recording Act his deed from Leipziger was entitled to priority over defendants' previous unrecorded release from the same source of title.

The trial court held, under the authority of *White* v. *Manhattan Railway Company* (139 N. Y. 19), that by the release these defend-

ants acquired title to the easements which were prior to that time vested in the owner of the premises, and that thereafter said easements were no longer an appurtenance to the premises owned by Leipziger. We think the decision in *White's* case fully supports the conclusion of the trial court. But if the instrument from Leipziger to defendants be regarded as a grant of real estate, plaintiff is not helped by the statute which he invokes. It reads : " Every conveyance of real estate within this State hereafter made shall be recorded in the office of the clerk of the county where such real estate shall· be situated ; and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a' valuable consideration of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded." (1 R. S. 756, § 1.)

The difficulty with plaintiff's position is, that he saw the defendants in the open and visible possession of the easements at the time of his purchase without taking any steps, as far as the record discloses, for the purpose of ascertaining by what title they held possession, and, therefore, he was not " a purchaser in good faith " within the meaning of the Recording Act. Under that act registry and possession, each, constitutes constructive notice which puts a party upon inquiry and charges him with notice of every fact to which inquiry would reasonably have led. Hence, where one is in actual possession under an unrecorded deed, he is protected against a subsequent purchaser who records his deed, because it was the duty of the purchaser to inquire as to the rights of the person in possession. (*Tuttle* v. *Jackson*, 6 Wend. 226.)

In *Phelan* v. *Brady* (119 N. Y. 587), which was an action brought to foreclose a mortgage upon certain premises given by M., who held an apparently perfect title, it appeared that before the execution of the mortgage M. had conveyed the premises to the defendant, who was in possession, and with her husband occupied two rooms in the premises, which consisted of a tenement building or block containing forty-three rooms or apartments, then occupied by twenty different occupants or families as tenants from month to month. In affirming the judgment which dismissed the complaint, the court said : " It may be true, as has been argued by the plaintiff's counsel, that when a party takes a conveyance of property situated as this

was, occupied by numerous tenants, it would ·be inconvenient and difficult for him to ascertain the rights or interests that are claimed by all or any of them. But this circumstance cannot change the rule. Actual possession of real estate is sufficient notice to a person proposing to take a mortgage on the property, and to all the world, of the existence of any right which the person in possession is able to establish." The necessary inference from the language which we have quoted is, that the duty of inquiry put upon an intending purchaser will not be fully satisfied by anything less than an inquiry of the occupant himself touching his title and interest. Easements capable of physical examination are embraced within the Recording Act and necessarily subject to the same law of notice as conveyances of a fee. (*Snell* v. *Levitt*, 39 Hun, 229.) In several decisions affecting easements occupied by the elevated railroad, it has been asserted that the law of notice is applicable. (*Mitchell* v. *Met. El. Ry. Co.*, 56 Hun, 546; 134 N. Y. 11.)

In *Mitchell's* case the General Term said : " The plaintiffs in this action took no means whatever of ascertaining upon what claim the elevated railway company based its right of possession, and unless such means were used they cannot possibly be considered as not having notice of whatever claim the defendants might be able to assert." In the Court of Appeals it was said: " The defendants' possession of the easements operated to give notice to all the world of a claim of right in respect thereto, so as to put all purchasers on inquiry."

The appellant contends that the possession, openly and visibly maintained by the defendants for six years, was that of trespassers, and as thereafter their possession continued openly and visibly in the same way apparently, plaintiff had the right to assume that the possession of the defendants at the time plaintiff took his deed was of the same character as that maintained by them at the beginning, and, therefore, he was excused from inquiry. It might be said that the record contains no evidence that the plaintiff indulged in any assumption whatever with reference to the character of defendants' possession when he purchased the property. It does not appear that he personally knew that the possession of the defendants was ever wrongful. But, assuming that he did know it, and that he indulged in the assumption that defendants' possession continued to be wrongful, the question

would be whether he could safely so assume. We think not. An intending purchaser may know that the occupant of the premises entered into possession under a lease, but it will not avail him to assume that he continued to occupy as a tenant if in the meantime the character of his occupancy underwent a change and he became the owner of the fee. There does not seem to be any better reason for assuming that the possession of a trespasser will not be changed in character in the course of time. The courts do not presume that a party who was once a trespasser is always a trespasser.

In *U line* v. *N. Y. Central & H. R. R. R. Co.* (101 N. Y. 126) Judge Earl, speaking for the court, says: "I think it quite absurd and illogical to assume that a wrong of any kind will forever be continued and that the wrongdoer will not discontinue or remedy it." In *Pappenheim's Case* (128 N. Y. 436) the court, through Peckham, J., says: "The law says their (the defendant railroad company's) action cannot be regarded as a permanent trespass for the very reason that it is unlawful, and the law will not presume that an unlawful act is to be forever continued." And in *Galway* v. *Met. El. R. R. Co.* (128 N. Y. 132) Ruger, Ch. J., says: "The plaintiff had reason to suppose the defendants would discontinue their trespasses, or, if they were continued, they would resort to legal means to justify them. They had no reason to believe that the defendants deliberately intended to prosecute their enterprise altogether regardless of the legal rights of others."

If the law will not presume that the wrongful possession continues there is no basis whatever for the distinction for which the appellant contends. And while the appellant may regard the failure of his speculation as unfortunate, it is not unfortunate in that broader sense which the law has in view in establishing legal rules by the application of principles which shall result to the general public good rather than that of the individual. For if it were to be held that possession of the easements by the elevated railroads constitutes an exception to the general rule that possession puts a would-be purchaser on inquiry as to the title and right of the occupant, confusion and uncertainty would result — the very thing which the law abhors. In some cases subsequent purchasers with prior titles would recover; in others, like *White's* case (*supra*), fail. If there were no other reason, the courts would hesitate before reaching the

conclusion that the exception to the general rule for which appellant contends should be created.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment affirmed, with costs.