made between the plaintiff and the defendants, whereby the defendants became obligated to pay a sum of money upon the failure of the bank upon which the check was drawn to pay it on demand. That such an agreement is not a contract or promise to answer for the debt or default of another person is conclusively established by the cases of Bruce v. Burr, 67 N. Y. 240, Cardell v. McNiel, 21 N. Y. 336, and Milks v. Rich, 80 N. Y. 269. The contract alleged in the complaint is, in substance, an agreement whereby the plaintiff gave to the defendants a sum of money for which the defendants gave to the plaintiff Franks' check, and as a part of that transaction agreed that Franks' check would be paid, or, if not paid, that they, the defendants, would pay it. That is quite different from the construction of the contract as claimed by counsel for the defendants, by which, as he construes the agreement, defendants said to Pratt, "Let us have $600, and Franks will make his check to you for the amount." There is no such allegation in the complaint. On the contrary, it assumes the existence of Franks' check, and that the plaintiff gave to the defendants a sum of money named, and at that time received from the defendants Franks' check, the defendants making at the same time the agreement upon which the action is brought. Counsel for the appellants also appears to take the position that a defense of the statute of frauds is not demurrable. The fact alleged in the defense which sets up the statute of frauds is that the contract was not in writing. By a demurrer to such a defense that fact is admitted, and it then becomes a question of law as to whether or not the contract sued on is one that the statute requires to be in writing, and no reason is suggested why the court cannot pass upon that question upon a demurrer as well as upon the trial. I am therefore of the opinion that the contract or promise upon which the cause of action is based is not a promise to answer for the debt, default, or miscarriage of another, is not by the statute required to be in writing, and that the demurrer was properly sustained.

The judgment is affirmed, with costs, the defendants to have the right to amend the answer within 20 days on payment of the costs in the court below and in this court. All concur.

---

HEIMBURG v. MANHATTAN RY. CO. et al.

(Supreme Court, Appellate Division, First Department. June 11, 1897.)

ELEVATED RAILROADS—CONSENT OF ABUTTING OWNERS.

> Plaintiff, who owned premises abutting on a street, but not the fee of the street, signed a writing by which he consented to the construction and operation of defendants' proposed elevated railroad in the street. *Held*, that such consent was a good defense to an action by plaintiff to enjoin the operation of the road as an invasion of plaintiff's easements in the street.
>
> Patterson, J., dissenting.

Appeal from special term, New York county.

Action by Charles E. Heimburg against the Manhattan Railway Company and another for an injunction and damages. There was a judgment in favor of plaintiff, and defendants appeal. Reversed.

Argued before RUMSEY, PATTERSON, O'BRIEN, INGRAHAM, and PARKER, JJ.

William H. Godden, for appellants.

Henry A. Forster, for respondent.

INGRAHAM, J. We think the instrument executed by Heimburg, the plaintiff, consenting to the construction and operation of an elevated railroad over, through, and along Third avenue in front of the plaintiff's premises, was a good defense to this action, and that upon that ground the complaint should have been dismissed. The plaintiff is not the owner of the fee of the street in front of his premises upon which the railroad is constructed. His interest in the street is that of an easement, and it is this easement that the defendants have appropriated; and to restrain the continuance of such appropriation this action is brought. As an answer to such an action, the defendants produce an instrument signed by the plaintiff, by which he consented to the construction and operation of an elevated railroad over, through, and along said avenue by the defendant corporation. This consent, so executed by the plaintiff, the owner of the property abutting upon the street, was delivered to the defendants before they commenced the construction of the road. The effect of the execution by the owner of property of such a consent has been presented to the court of last resort in two cases,— one, Herzog v. Railroad Co., reported in this court in 76 Hun, 486, 27 N. Y. Supp. 1034, and affirmed by the court of appeals without opinion in 151 N. Y. 665, 46 N. E. 1148. In that case, the court at general term, in affirming a judgment dismissing the complaint, said:

"The road, the operation of which this action is brought to enjoin, was built by and with the consent of the owners of the premises in question; and it would be inequitable now to permit a subsequent owner buying said premises with knowledge of such consent to enjoin the operation of the road in violation of its terms. Even if an action for damage might be sustained, a court of equity would not, under such circumstances, intervene, and by injunction restrain the operation of the defendant's road."

The same question was before the court of appeals in the case of White v. Railway Co., 139 N. Y. 19, 34 N. E. 887. In that case the owner of the property executed a consent almost identical with that executed by this plaintiff, and it was there held that the execution of such a consent authorized the defendant to construct the road, and was a good defense to an action brought to restrain the construction or maintenance of the road which was built in compliance with such consent. All of the reasons urged upon us here why such a consent should not have this effect were presented to and discussed by the court of appeals in the White Case, and decided against the plaintiff. In this case, however, there was an effort made to show that the signature of the plaintiff was a conditional assent, because he added to his signature the words, "If

the road must be on Third avenue, I prefer the middle." There was nothing in the addition of these words to his signature to show that he qualified his assent to this instrument in any way. The instrument, by its terms, consented to the erection of the road on Third avenue in front of his premises. He expressed, in executing this instrument, his wish as to the position in the street in which the road should be built, and, so far as appears in the evidence, the road was built in the middle of the street, and not upon the sidewalk. Whether or not this consent would be given its effect if the road had been built upon the sidewalk in violation of this request of the plaintiff, it is not necessary for us to determine. The plaintiff also seems to rely upon some vague idea that there was something fraudulent in his being induced to sign this consent. He says, "When these people came for the consent to give away privileges, I was induced and I was in a manner overpersuaded." It has not yet been held that because a person was induced and overpersuaded to sign an instrument it is for that reason fraudulent, and not to be enforced. But he also says that he was given to understand "by the party who brought this to get the consent that this consent was not necessary; that they had already the sanction of the legislative and city authorities; that it was merely to give our views whether we were in favor of a sidewalk or a center road." This statement was entirely true. The defendants had the authority of the legislature and the city to build this road. They also obtained the right, notwithstanding a refusal of the property owners to give their consent. So it is quite true that the assent of the plaintiff or the other property owners was not necessary to enable the defendants to build the road. The plaintiff, therefore, was not at all deceived as to the effect of his assent to this agreement, or by the statement that the agreement, which in express terms authorized the defendants to construct the road in the street, was not necessary, but was only to get the views of the property owners as to whether the road should be constructed on the sidewalk or in the street. Assuming that this was so, and that this plaintiff, when he signed this consent, thought that he was signing a consent to do an act which the defendants had a lawful right to do, but that the defendants, wishing to meet the views of the property owners adjacent upon the street, asked them for their consent to build the road, with an indication as to just where the road should be built, and to accomplish that result the plaintiff signed the consent to build the road, indicating at the same time his preference, I am at an entire loss to see where there is any evidence of fraud, or any evidence from which a court could refuse to give to the instrument its legal significance. The plaintiff does not pretend that he is incapable of reading or understanding the English language, that he is an idiot, or an incompetent person, or that he did not understand what this instrument was. He does say that he was overpersuaded; and it is quite likely, if he had known that the signing of this instrument would prevent him from recovering a judgment against the road, he would have refused to be persuaded at all. But he signed this consent voluntarily upon statements which were not fraudulent, and did not mis-

represent the existence of a single fact; and the legal effect of that consent is to take away from him the right to maintain an action in equity to restrain the operation and maintenance of the road. There is nothing in the record to justify us in refusing to give to that consent its legal effect, and such legal effect is to prevent the plaintiff from maintaining this action.

Without discussing the other questions presented, or expressing an opinion upon them, for the reasons stated we think the judgment should be reversed, and the complaint dismissed, with costs in this court and the court below. All concur, except PATTERSON, J., dissenting.